UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EMPLOYERS MUTUAL CASUALTY COMPANY** | CIVIL ACTION |
| VERSUS | NO. 19-12652 |
| PETE VICARI GENERAL CONTRACTOR, LLC, PETER VICARI AND BARBARA VICARI | SECTION "L" (3) |

## ORDER & REASONS

Before the Court are Plaintiff Employers Mutual Casualty Company's Motions to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Docs. 9, 18. The motions are opposed. R. Docs. 21, 23. Plaintiff filed replies. R. Docs. 45, 44. Having considered the parties' briefs and the applicable law, the Court now rules as follows.

I.     BACKGROUND

Plaintiff Employers Mutual Casualty Company ("EMCC") filed suit against Pete Vicari General Contractor, LLC ("PVGC"), Pete Vicari, and Barbara Vicari. R. Doc. 1 at 1. EMCC is a surety company that issues payment, performance and lien bonds and stand as a surety for selected contractors, while PVGC is a contractor in the business of performing construction work. R. Doc. 1 at 2. In order to obtain work on certain projects, PVGC needed performance and payment bonds and sought these bonds from EMCC. R. Doc. 1 at 2. EMCC claims that in order to induce EMCC to issue bonds for PVGC, in February 2011, PVGC, Pete Vicari, and Barbara Vicari (collectively, "Indemnitors") executed a General Indemnity Agreement in favor of EMCC. R. Doc. 1 at 3. EMCC claims that as a result of numerous projects in which PVGC was involved, claims were made against PVGC and EMCC for alleged defective and delayed performance, and non-payment for work and/or materials by PVGC. R. Doc. 1 at 10–23. Specifically, EMCC alleges that PVGC

1

entered into a contract with the Plaquemines Parish School Board ("PPSB") for a construction project known as Belle Chasse Primary Pre K-1 ("BCEL"). R. Doc. 1 at 12. EMCC alleges that because of project delays and construction issues, PPSB issued a Notice of Default and Termination Letter to PVGC in November 2015 and initiated a claim against the BCEL Performance Bond. R. Doc. 1 at 13–18. EMCC then conducted an investigation of PPSB's termination of PVGC and claim against the BCEL Performance Bond and ultimately denied PPSB's claim. R. Doc. 1 at 18–19. Thereafter, beginning in late February/early March 2016, EMCC, PPSB, and PVGC engaged in settlement negotiations. R. Doc. 1 at 23. Following settlement negotiations, EMCC contends that it agreed to a limited waiver of the indemnity obligations owed to EMCC by Indemnitors, but alleges that this Limited Waiver of Indemnity was wholly contingent on the execution of the Settlement Agreement and no additional claims being made against the BCEL Performance Bond. R. Doc. 1 at 27–28. However, EMCC argues that subsequent claims voided the Limited Waiver of Indemnity and made Indemnitors fully liable for all of EMCC's incurred costs and losses as a result of providing the BCEL Bond. R. Doc. 1 at 41.

To date, EMCC alleges that it has sustained a total loss of $1,195,921.46 representing amounts paid for claims, consulting fees, and attorneys' fees in connection with the BCEL Bond and the Lafitte Bond (collectively, "Bonds") that EMCC issued on behalf of PVGC. R. Doc. 1 at 52. EMCC thus seeks specific performance of the Indemnity Agreement and request a deposit of collateral security of $1,100,000 under the Indemnity Agreement. R. Doc. 1 at 53. EMCC also seeks a judgment declaring the Limited Waiver of Indemnity null and void and making Indemnitors fully liable under the Indemnity Agreement, and requiring Indemnitors to pay EMCC in the amount of $1,195,921.46 to reimburse EMCC for the losses, costs, and expenses incurred to date. R. Doc. 1 at 66. Moreover, EMCC seeks judgment in EMCC's favor for reimbursement

of all sums expended by EMCC, for an order requiring Indemnitors to indemnify and exonerate EMCC for all liabilities, losses, and expenses, and attorneys' fees, and for an order permanently enjoining PVGC, Pete Vicari, and Barbara Vicari from selling, transferring, disposing, liening their assets and property, etc. unless and EMCC is paid. R. Doc. 1 at 66.

PVGC, Peter Vicari, and Barbara Vicari filed an Answer, Affirmative Defenses, and Counterclaim. R. Doc. 6. Defendants generally deny the allegations and also assert numerous affirmative defenses, including that: (1) they are not liable to EMCC for indemnity or damages; (2) they complied with all terms, conditions, and requirements of the General Agreement of Indemnity; (3) they acted in good faith at all times; (4) EMCC breached the terms, conditions, and requirements of the Indemnity Agreement and Performance Bonds and therefore released and waived any claims against Defendants; (5) EMCC acted in bad faith; and (6) they are not responsible for any alleged damages or losses sustained by EMCC. R. Doc. 6 at 34–37. Defendants also assert a Counterclaim against EMCC, contending EMCC engaged in bad faith with respect to the Indemnity Agreement and Performance Bonds. Moreover, Defendants argue that EMCC's demand for collateral is invalid because the construction job that the surety secured has been completed and no claims have been made; thus, no collateral is required. R. Doc. 6 at 59. Defendants thus seek declaratory relief, and damages for the following: breach of contract, breach of the covenant of good faith, violations under the Louisiana Unfair Trade Practices Act ("LUTPA"), and detrimental reliance.

## II. PENDING MOTION

EMCC now files two Motions to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6) against Indemnitors: (1) a Motion to Dismiss Indemnitors' counterclaims for declaratory relief, breach of the Indemnity Agreement, and breach of the covenant of good faith;

and (2) a Motion to Dismiss Indemnitors' counterclaim for violation of LUTPA. R. Docs. 9 at 1, 18 at 1. Specifically, EMCC alleges that Indemnitors have failed to plead sufficient facts to support their claims that EMCC's alleged anticipatory breach warrants declaratory relief, EMCC's obligations under the Indemnity Agreement constitute a breach of contract, and EMCC possesses a duty of good faith to Indemnitors. R. Doc. 9-1 at 1. EMCC also contends that LUTPA does not allow for claims against sureties because they are under the jurisdiction of the Insurance Commissioner, so the Court should dismiss Indemnitors' LUTPA claim against EMCC. R. Doc. 18-1 at 1.

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, a court must construe facts in the light most favorable to the nonmoving party, *id.*, and it "must accept as true all of the factual allegations

contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

IV.   **DISCUSSION**

EMCC moves for dismissal of certain counterclaims brought by Indemnitors, namely that: (1) EMCC's alleged anticipatory breach or repudiation of the Indemnity Agreement has rendered the Agreement null and void, R. Doc. 9-1 at 5; (2) EMCC breached the Indemnity Agreement, R. Doc. 9-1 at 6; (3) EMCC breached its duty of good faith with respect to the BCEL Bonds or Indemnity Agreement, R. Doc. 9-1 at 7; and (4) Indemnitors have a right of action against EMCC under LUTPA, R. Doc. 18-1 at 4. The Court will consider each of these issues in turn.

A.   **Counterclaim Count I – Declaratory Relief**

In Count I of their Counterclaim, Indemnitors seek a declaratory judgment that the Indemnity Agreement is null and void. R. Doc. 6 at 64. Specifically, Indemnitors allege that EMCC's bad faith breaches and conduct constitute an anticipatory breach and/or repudiation of the Indemnity Agreement, which would render the Indemnity Agreement null and void. R. Doc. 6 at 64.

EMCC argues that the Court should dismiss this Count because Indemnitors' reliance on the doctrine of anticipatory breach is incorrect and therefore the entire Count has no merit. R. Doc. 9-1 at 5. EMCC explains that the doctrine of anticipatory breach of contract applies when the obligor announces that he will not perform an obligation that is due in the future, which does not apply in this case because Indemnitors allegedly have not pled any facts to support an allegation that EMCC anticipatorily breached the contract. R. Doc. 9-1 at 6.

In opposition, Indemnitors contend that EMCC has only alleged that its actions did not constitute anticipatory breach, but ignore the numerous breaches and bad faith acts by EMCC that support Indemnitors' claim that EMCC's actions have rendered the Indemnity Agreement null and void. R. Doc. 21 at 6. Indemnitors argue that in over 35 pages of their Counterclaim, they lay out facts that support their contention that EMCC breached its good faith duties and conducted bad faith actions with respect to the Indemnity Agreement, Partial Waiver of Indemnity, and Settlement Agreement. R. Doc. 21 at 6–7.

For Indemnitors to survive a Rule 12(b)(6) motion to dismiss on Count I of their Counterclaim, they simply must include enough factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, the Court must construe the facts in the pleadings in the light most favorable to Indemnitors and must accept as true all of the factual allegations contained in Indemnitors' Answer and Counterclaim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 572. Based on this standard, the Court cannot conclude that Indemnitors have failed to plead sufficient facts to support their claim that EMCC's actions either constitute an anticipatory breach of the Indemnity Agreement or involve breaches and bad faith acts that render the Indemnity Agreement null and void. Therefore, the Court declines to dismiss Count I of Indemnitors' Counterclaim at this early stage in the case, particularly because discovery has barely been underway.

**B. Counterclaim Count II – Breach of Indemnity Agreement**

In Count II of their Counterclaim, Indemnitors contend that EMCC breached its contractual agreements with PVGC and Indemnitors, including, but not limited to, the Indemnity Agreement, the Settlement Agreement, and the Partial Waiver of Indemnity ("the Contracts"). R. Doc. 6 at 65. Indemnitors argue that under both Louisiana and Iowa law, there is an implied covenant of good

faith and fair dealing in every contract, and that EMCC breached this covenant and therefore breached the Contracts. *See* R. Docs. 6 at 65, R. Doc. 21 at 9.

EMCC only seeks to dismiss Indemnitors' Count II allegations with respect to the Indemnity Agreement. R. Doc. R. Doc. 45 at 3. EMCC contends that Indemnitors fail to reference a particular provision of the Indemnity Agreement that EMCC purportedly violated and therefore Count II should be dismissed as it relates to the Indemnity Agreement. R. Doc. 9-1 at 7.

For Indemnitors to survive EMCC's Rule 12(b)(6) motion to dismiss its breach of contract claim regarding the Indemnity Agreement, Indemnitors need to "plead specific facts, not mere conclusory allegations." *Elliott*, 867 F.2d at 881. Here, Indemnitors point to Section 24 of the Indemnity Agreement to support their claim that EMCC had a duty to act reasonably toward Indemnitors and also highlight the fact that there is an implied duty of good faith and fair dealing in every contract, including the Indemnity Agreement. Indemnitors contend that EMCC breached its duty to act reasonably and engage in good faith and fair dealing by:

> seeking recovery of amounts EMCC knowingly waived in the Partial Waiver of Indemnity; making unreasonable demands upon Counterclaimants for unnecessary collateral; unreasonably withholding consent of surety for the final pay application, inclusive of retainage; unnecessarily incurring attorney's fees, consultant's fees, and other costs without notifying Counterclaimants or providing an itemization or description to Counterclaimants; intentionally using its powers under the [Indemnity Agreement] to threaten, harass, and cause financial harm to Counterclaimants; and acting in a commercially unreasonable manner as will be shown at trial.

R. Doc. 6 at 66.

Accepting as true all of these factual allegations, *see Twombly*, 550 U.S. at 572, the Court concludes that Indemnitors have pled sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss on their breach of contract claim with respect to the Indemnity Agreement. The Court thus declines to dismiss Count II of Indemnitors' Counterclaim as it relates to the Indemnity

Agreement, particularly because parties have not been able to conduct sufficient discovery at this stage in the case.

## C. Counterclaim Count III – Breach of the Covenant of Good Faith

In Count III of their Counterclaim, Indemnitors argue that a surety, such as EMCC, has an obligation of good faith towards its principals and indemnitors. R. Doc. 6 at 68. Moreover, Indemnitors contend that Louisiana courts have applied this duty of good faith to payment and performance bonds and indemnity agreements. R. Doc. 6 at 68. Indemnitors allege that EMCC has breached its duty of good faith to PVGC and Indemnitors, and has acted in a dishonest manner and engaged in commercially unreasonable standards of fair dealing. R. Doc. 6 at 69. Indemnitors thus seek to recover damages caused by EMCC's breaches of its good faith obligation. R. Doc. 6 at 69.

For Indemnitors to survive a Rule 12(b)(6) motion to dismiss on Count III of their Counterclaim, they simply must include enough factual allegations that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, the Court must construe the facts in the pleadings in the light most favorable to Indemnitors and must accept as true all of the factual allegations contained in Indemnitors' Answer and Counterclaim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 572. Based on this standard, the Court cannot conclude that Indemnitors have failed to plead sufficient facts to support their claim that EMCC's actions breach the covenant of good faith that is inherent in all contracts. Therefore, the Court declines to dismiss Count III of Indemnitors' Counterclaim at this point in the case.

## D. Counterclaim Count IV – Violation of LUTPA

In Count IV of their Counterclaim, Indemnitors allege that they have a cause of action under LUTPA. R. Doc. 6 at 69. LUTPA declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." La. R.S.

8

§ 51:1405. LUTPA allows for private actions brought by "[a]ny person who suffers any ascertainable loss of money or movable property . . . as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful." La. R.S. § 51:1409. Indemnitors aver that EMCC has engaged in "unethical, deceitful, oppressive, unscrupulous, and substantially injurious conduct in the course of its dealings with PVGC and the Indemnitors" and therefore Indemnitors have a viable cause of action under LUTPA. R. Doc. 6 at 70.

In its Motion to Dismiss this Count, EMCC argues that it is exempt from LUTPA claims because the Act does not apply to claims against companies within the jurisdiction of the Insurance Commissioner. La. R.S. § 51:1406. EMCC states that sureties come within the jurisdiction of the Insurance Commissioner because a surety is defined as a type of insurance under Louisiana law. La. R.S. § 22:47(18). Therefore, EMCC claims it is under the jurisdiction of the Insurance Commissioner and thereby exempt from LUTPA claims. R. Doc. 18-1 at 4. EMCC points to the fact that this exemption was included in LUTPA because the Insurance Code provides the appropriate remedy against insurance companies who allegedly engage in unfair practices. R. Doc. 18-1 at 4.

In opposition, Indemnitors state that even if EMCC is subject to the jurisdiction of the Insurance Commissioner, it does not mean that EMCC is exempt from LUTPA claims. R. Doc. 23 at 3. Indemnitors point to a Louisiana appellate court decision in which the court recognized that a plaintiff may have a claim against an insurance company if the allegedly unfair or deceptive acts do not fall within the enumerated acts or practices over which the Insurance Commissioner has jurisdiction. *Foster-Somerled Enterprises, LLC v. St. Paul's Episcopal Church*, 51,063 (La. App. 2 Cir. 1/11/17), 212 So. 3d 1191, 1196 ("An examination of La. R.S. 22:1964 demonstrates that

the alleged unfair acts by GuideOne are not included in the enumerated unfair methods of competition and unfair or deceptive acts or practices in the business of insurance over which the Insurance Commissioner has jurisdiction. Therefore, Plaintiffs may have a private right of action pursuant to La. R.S. 51:1409."). Indemnitors claim that the acts described in their Counterclaim do not fall within the enumerated methods, acts, and practices that are defined as unfair or deceptive by the Louisiana Insurance Code, and therefore, Indemnitors have a private right of action against EMCC under LUTPA. R. Doc. 23 at 4.

Based on the case law cited by both sides, it appears to the Court that there is uncertainty as to whether a claim involving an insurance company—such as a surety—always falls under the purview of the Insurance Commissioner and is thus exempt from being brought under LUTPA. *Compare Foster-Somerled Enterprises*, 212 So. 3d at 1196 *with Dillon v. Bankers Ins. Co.*, 2009-1121 (La. App. 1 Cir. 2/12/10), 2010 WL 502838, at *3. Moreover, because the Louisiana Supreme Court has yet to rule on this issue, the Court will be required to make an "Erie guess" as to how the Supreme Court would rule. Because this case is still at an early stage of discovery, the Court declines to make a determination at this time and dismiss Indemnitors' violation of LUTPA claim until further facts can be gathered. If, at a later date, EMCC wishes to re-urge this issue, the Court will then assess whether Indemnitors' LUTPA claim is one that solely falls within the jurisdiction of the Insurance Commissioner and must therefore be dismissed from this action.

V. **CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Employers Mutual Casualty Company's Motion to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6), R. Doc. 9, is hereby **DENIED** as premature, reserving the right of the party to re-file at a later date if necessary.

**IT IS FURTHER ORDERED** that Plaintiff Employers Mutual Casualty Company's Motion to Dismiss Certain Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6), R. Doc. 18, is hereby **DENIED** as premature, reserving the right of the party to re-file at a later date if necessary.

New Orleans, Louisiana, this 6th day of February, 2020.

                                                 ELDON E. FALLON
                                                 UNITED STATES DISTRICT JUDGE