# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EMPLOYERS MUTUAL CASUALTY COMPANY** | CIVIL ACTION |
| VERSUS | NO. 19-12652 |
| **PETE VICARI GENERAL CONTRACTOR, LLC, PETER VICARI AND BARBARA VICARI** | SECTION "L" (3) |

## ORDER & REASONS

Before the Court is Plaintiff Employers Mutual Casualty Company's Motion for Partial Summary Judgment. R. Doc. 11. The motion is opposed. R. Doc. 34. Plaintiff filed a reply. R. Doc. 46. Having considered the parties' briefs and the applicable law, the Court now rules as follows.

### I. BACKGROUND

Plaintiff Employers Mutual Casualty Company ("EMCC") filed suit against Pete Vicari General Contractor, LLC ("PVGC"), Pete Vicari, and Barbara Vicari. R. Doc. 1 at 1. EMCC is a surety company that issues payment, performance and lien bonds and stand as a surety for selected contractors, while PVGC is a contractor in the business of performing construction work. R. Doc. 1 at 2. In order to obtain work on certain projects, PVGC needed performance and payment bonds and sought these bonds from EMCC. R. Doc. 1 at 2. EMCC claims that in order to induce EMCC to issue bonds for PVGC, in February 2011, PVGC, Pete Vicari, and Barbara Vicari (collectively, "Indemnitors") executed a General Indemnity Agreement in favor of EMCC. R. Doc. 1 at 3. EMCC claims that as a result of numerous projects in which PVGC was involved, claims were made against PVGC and EMCC for alleged defective and delayed performance, and non-payment for work and/or materials by PVGC. R. Doc. 1 at 10–23. Specifically, EMCC alleges that PVGC

1

entered into a contract with the Plaquemines Parish School Board ("PPSB") for a construction project known as Belle Chasse Primary Pre K-1 ("BCEL"). R. Doc. 1 at 12. EMCC alleges that because of project delays and construction issues, PPSB issued a Notice of Default and Termination Letter to PVGC in November 2015 and initiated a claim against the BCEL Performance Bond. R. Doc. 1 at 13–18. EMCC then conducted an investigation of PPSB's termination of PVGC and claim against the BCEL Performance Bond and ultimately denied PPSB's claim. R. Doc. 1 at 18–19. Thereafter, beginning in late February/early March 2016, EMCC, PPSB, and PVGC engaged in settlement negotiations. R. Doc. 1 at 23. Following settlement negotiations, EMCC contends that it agreed to a limited waiver of the indemnity obligations owed to EMCC by Indemnitors, but alleges that this Limited Waiver of Indemnity was wholly contingent on the execution of the Settlement Agreement and no additional claims being made against the BCEL Performance Bond. R. Doc. 1 at 27–28. However, EMCC argues that subsequent claims voided the Limited Waiver of Indemnity and made Indemnitors fully liable for all of EMCC's incurred costs and losses as a result of providing the BCEL Bond. R. Doc. 1 at 41.

To date, EMCC alleges that it has sustained a total loss of $1,195,921.46 representing amounts paid for claims, consulting fees, and attorneys' fees in connection with the BCEL Bond and the Lafitte Bond (collectively, "Bonds") that EMCC issued on behalf of PVGC. R. Doc. 1 at 52. EMCC thus seeks specific performance of the Indemnity Agreement and request a deposit of collateral security of $1,100,000 under the Indemnity Agreement. R. Doc. 1 at 53. EMCC also seeks a judgment declaring the Limited Waiver of Indemnity null and void and making Indemnitors fully liable under the Indemnity Agreement, and requiring Indemnitors to pay EMCC in the amount of $1,195,921.46 to reimburse EMCC for the losses, costs, and expenses incurred to date. R. Doc. 1 at 66. Moreover, EMCC seeks judgment in EMCC's favor for reimbursement

of all sums expended by EMCC, for an order requiring Indemnitors to indemnify and exonerate EMCC for all liabilities, losses, and expenses, and attorneys' fees, and for an order permanently enjoining PVGC, Pete Vicari, and Barbara Vicari from selling, transferring, disposing, liening their assets and property, etc. unless and EMCC is paid. R. Doc. 1 at 66.

PVGC, Peter Vicari, and Barbara Vicari filed an Answer, Affirmative Defenses, and Counterclaim. R. Doc. 6. Defendants generally deny the allegations and also assert numerous affirmative defenses, including that: (1) they are not liable to EMCC for indemnity or damages; (2) they complied with all terms, conditions, and requirements of the General Agreement of Indemnity; (3) they acted in good faith at all times; (4) EMCC breached the terms, conditions, and requirements of the Indemnity Agreement and Performance Bonds and therefore released and waived any claims against Defendants; (5) EMCC acted in bad faith; and (6) they are not responsible for any alleged damages or losses sustained by EMCC. R. Doc. 6 at 34–37. Defendants also assert a Counterclaim against EMCC, contending EMCC engaged in bad faith with respect to the Indemnity Agreement and Performance Bonds. Moreover, Defendants argue that EMCC's demand for collateral is invalid because the construction job that the surety secured has been completed and no claims have been made; thus, no collateral is required. R. Doc. 6 at 59. Defendants thus seek declaratory relief, and damages for the following: breach of contract, breach of the covenant of good faith, for violations under the Louisiana Unfair Trade Practices Act ("LUTPA"), and for detrimental reliance.

## II. PENDING MOTION

EMCC now files a motion for partial summary judgment against Indemnitors, seeking collateral of $1,110,000 from them. R. Doc. 11 at 1. EMCC argues that it has incurred losses and costs as a result of providing bonds to PVGC and on May 28, 2019, EMCC issued a collateral

3

demand pursuant to Section 11 of the Indemnity Agreement to Indemnitors. R. Doc. 11-1 at 4. However, Indemnitors failed to provide the requested security, so EMCC now requests that Indemnitors deposit $1,110,000 as collateral pursuant to EMCC's rights under the Indemnity Agreement. R. Doc. 11-1 at 4–5.

III.    LAW AND ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, the court must assess the evidence and "review the facts

drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). But "unsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50.

However, summary judgment is generally "not appropriate unless the nonmoving party has been provided adequate time for discovery." *Bankers Trust Co. of California v. Boydell*, 46 F. App'x 731 (5th Cir. 2002) (citing *Celotex,* 477 U.S. at 322). "When a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 720 (5th Cir. 1999) (citing *Anderson,* 477 U.S. at 250).

In this case, EMCC argues that the Indemnity Agreement serves as the binding law between EMCC and Indemnitors, and the parties agreed that Iowa law would govern the contract. R. Doc. 11-1 at 6–7. Under Iowa law, a surety has the right to demand that the securities in the hands of a creditor are preserved for his indemnity in the event that he is compelled to pay it. *Bedwell v. Gephart*, 24 N.W. 585, 586 (1885). Moreover, Louisiana federal courts have applied Iowa federal law and held that a surety is entitled to collateral security pursuant to an indemnity agreement. *See W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 794 (M.D. La. 2018) ("[P]laintiff has established that it is entitled under Iowa law to specific performance of its contractual right to collateral security."); *Employers Mut. Cas. Co. v. Precision Const. & Maint., LLC*, No. CIV.A. 14-1420, 2015 WL 5552414, at *2 (E.D. La. Sept. 17, 2015) (granting partial summary judgment to surety for collateral demand in the amount of $300,000). EMCC alleges that it is undisputed it requested Indemnitors to provide $1,110,000 in collateral, which Indemnitors refused, so there was a breach of the Indemnity Agreement and EMCC is entitled to collateral security. R. Doc. 11-

1 at 10. EMCC thus contends there are no genuine issues of material fact on these issues and partial summary judgment for collateral security is warranted. R. Doc. 11-1 at 11.

In opposition, Indemnitors argue that EMCC that EMCC is attempting to "short-circuit this litigation by asking the Court to prematurely adjudicate the seminal issues in this case." R. Doc. 34 at 1. Indemnitors contend that this case is not a typical dispute in which a surety is seeking collateral from indemnitors to protect against future loss, but rather, it involves egregious misconduct" by a surety that breached its obligations in bad faith. R. Doc. 34 at 1. Indemnitors further allege that the Indemnity Agreement is not the exclusive law between the parties because there were subsequent waiver and settlement agreements that "significantly modified the rights of the parties" under the Indemnity Agreement. R. Doc. 34 at 2. In fact, Indemnitors believe that EMCC's breach of its contractual and good faith obligations have nullified EMCC's right to demand collateral and it would be inequitable and prejudicial to Indemnitors to require them to pay collateral when their obligation to indemnify is null and void as a matter of law. R. Doc. 34 at 2. Moreover, Indemnitors allege that their Counterclaim raises numerous genuine issues of material fact that defeat summary judgment. R. Doc. 34 at 2. Indemnitors also contend that EMCC is misrepresenting the remedy it is seeking and that it is actually seeking recovery of alleged losses rather than collateral as it claims. R. Doc. 34 at 25. Finally, Indemnitors argue that summary judgment is also not warranted because there has been a lack of adequate discovery in this matter, particularly regarding the critical fact issues at play in this motion. R. Doc. 34 at 28.

As a preliminary matter, it is not clear whether EMCC is actually seeking recovery of alleged past losses—which is not subject to a collateral demand—or whether it is actually seeking collateral as it claims. If the latter, it is unclear as to the purpose of the collateral since it appears

that the construction job has been completed and no claims have been filed. Nevertheless, the Court concludes that the parties have not "been provided adequate time for discovery" in this matter and therefore, summary judgment is not appropriate at this time. *See Boydell*, 46 F. App'x 731. To date, no depositions have been conducted and document discovery is minimal at best. Further discovery will enable the parties to establish whether EMCC is seeking collateral pursuant to the Indemnity Agreement as it claims, or whether EMCC is seeking payment for past losses as Indemnitors claim. Accordingly, the Court will deny this motion for partial summary judgment as premature and give the non-moving party a "full and fair opportunity to discover information essential to its opposition to summary judgment." *Access Telecom, Inc.*, 197 F.3d at 720.

## IV. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff Employers Mutual Casualty Company's Motion for Partial Summary Judgment, R. Doc. 11, is hereby **DENIED** as premature, reserving the right of the party to re-file at a later date if necessary.

New Orleans, Louisiana, this 6th day of February, 2020.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE